No. 10,554.

THE STATE, EX REL. JAMISON, AUDITOR, *v.* BEAL ET AL.

MORTGAGE.—*Priority.—Pleading, Construction of.*—W. mortgaged a tract of land to secure a loan of school funds, and then conveyed the tract to G., who mortgaged it to R. to secure a debt, and then conveyed it to J., who renewed the loan of school funds, giving a new note and mortgage therefor.    Afterwards J. borrowed money, B. becoming his surety therefor, and with it paid off the mortgage to R., who released it of record; but subsequently B., in a suit against G. only, alleging that he had been compelled to pay the loan for which he had become surety for J., and that the mortgage to R. had been assigned to him on that account, obtained a decree of foreclosure of that mortgage, under which he bought the land at sheriff's sale, and then died.

*Held,* that a complaint against the widow and heirs of B. to foreclose the second·mortgage for loan of school funds (made by J.), stating the foregoing facts, was bad on demurrer, for the reason that upon a complaint to foreclose that mortgage no right in equity to rely on the previous mortgage could be considered.

*Held,* also, that the allegations and admissions in such complaint with reference to the title of B.'s heirs, not being full and explicit, must be construed most strongly against the pleader.

From the Washington Circuit Court.

*S. B. Voyles* and *H. Morris,* for appellant.

*D. M. Alspaugh* and *J. C. Lawler,* for appellees.

NIBLACK, J.—Complaint by the State, on the relation of William G. Jamison, auditor of Washington county, averring that during the year 1865 one Matthias Weeks was the owner in fee simple of the south half of the northeast quarter of section No. 30, in town. No. 4 north, of range No. 4 east; that in that year he, the said Weeks, borrowed out of the school funds held in trust by said county of Washington, about the sum of $145, for which he executed his note to the State of Indiana, and to secure the payment of which he mortgaged to said State the tract of land above described; that said mortgage was duly recorded in the recorder's office of said county, being the county in which the land was situate; that not long after said mortgage was executed, one Martin L. Ribelin obtained a judgment before a justice of the peace against Weeks for $165, and caused a transcript of said judgment to be filed in the office of the clerk of the common pleas court of Washington county, and entered of record in such a way as to make the judgment a lien on said land; that afterwards, in the year 1869, Weeks sold and conveyed the land to one Henry Grinestaff, subject to the mortgage and the lien of the Ribelin judgment, and that Grinestaff thereupon mortgaged the land to Ribelin to secure the payment of his judgment against Weeks; that Grinestaff soon after sold and conveyed the land, in that doubly mortgaged condition, to one Palen Jackson; that, on the 8th day of January, 1870, for the purpose of renewing the school fund mortgage made by Weeks, and of renewing and extending the loan which that mortgage was given to secure, and for no other consideration, Jackson executed another note to the State of Indiana for the sum of $145, and another mortgage on the same land to secure the payment of such new note, which mortgage was also duly recorded in the proper recorder's office; that, in the year 1875, Jackson, with William Beal and others as his sureties, borrowed money to pay off the Ribe-

lin mortgage, and, with the money thus borrowed, did pay the debt which that mortgage was given to secure; that, upon such payment, Ribelin released his mortgage of record; that afterwards the said William Beal brought suit in the Washington Circuit Court against Grinestaff, as sole defendant, alleging that he had paid the money, which had been used to pay off the Ribelin mortgage as the surety for Jackson, and that said mortgage had been assigned to him on that account; that Grinestaff made no defence to said suit, and Beal obtained a decree of foreclosure of the Ribelin mortgage in his favor; that, at a sale of the mortgaged land under that decree of foreclosure, Beal became the purchaser thereof; that Beal has since died, leaving Susan Beal as his widow, and John Beal, Dawson Beal, Ninnie Beal and Cary Beal as his only children surviving him, all of whom, together with Jackson, were made defendants to this action; that the note executed by Jackson to the State remained unpaid, and that the mortgage given by him to secure that note was, consequently, unsatisfied, copies of both of which were filed with the complaint. Wherefore a personal judgment against Jackson for the amount due upon the note, and a decree of foreclosure of the mortgage against all the defendants, were severally demanded.

Jackson made default, and a personal judgment was rendered against him for the amount due upon the note, principal and interest. The other defendants, the widow and children of William Beal, demurred to the complaint, alleging insufficiency of the facts to constitute a cause of action against them, and the court sustained their demurrer. The relator declining to plead further, final judgment was rendered against the State in favor of the last named defendants.

The only question presented upon this appeal is, Was the complaint sufficient upon demurrer as against the widow and children of William Beal? It is argued that, as the mortgage executed by Jackson was given only in renewal of the loan made to Weeks, the lien of the Weeks mortgage was not destroyed by the acceptance of the Jackson mortgage, but was

The State, *ex rel.* Jamison, Auditor, *v.* Beal *et al.*

continued in force so far as its existence is necessary for the exclusion of intervening liens and the collection of the debt which both mortgages were made to secure.    This argument is based upon the theory that a court of equity will keep an encumbrance alive and treat it as a continuing lien, when necessary to subserve the principles of justice, and the actual and just intention of the parties most interested, and that the ends of justice will be best promoted in this case by holding that the lien of the Weeks mortgage was continued in force to the extent of giving priority to the Jackson, over the Ribelin, mortgage.

The theory thus relied upon, however, has a more particular application to cases where the parties are seeking relief against the consequences of some fraud or mistake, and where the object of the action is to enforce the encumbrance sought to be kept alive.

A proper application of the doctrine contended for would require the State to fall back upon, and to demand the foreclosure of, the Weeks mortgage upon the ground that the lien created by that mortgage has never been divested; and this illustrates the inapplicability of the doctrine in question to the case at bar.    *Sidener* v. *Pavey,* 77 Ind. 241.

It is, therefore, in our view, quite immaterial to this case in the form in which it is now presented, whether the Jackson mortgage was executed to secure a pre-existing debt, or upon a new consideration.

We find it difficult to deduce from the allegations and admissions of the complaint the precise state of facts under which William Beal acquired, or claimed to acquire, title to the land in controversy.    Not being full and explicit in that respect, the allegations and admissions of the complaint must be taken most strongly against the pleader.    The fair inference from the allegations and admissions in question, however, appears to us to be that, while Ribelin assumed to discharge his mortgage from Grinestaff of record, it was claimed that he really assigned the mortgage to Beal to indemnify him as the surety

of Jackson, and that Beal, acting upon the assumption that he was, in this way, the owner of that mortgage, proceeded to foreclose it against Grinestaff; that the court, adjudging him to be the owner of the mortgage by assignment, as claimed, rendered a judgment of foreclosure upon it in his favor; that upon a sale of the land under that judgment he became the purchaser.

The inference we thus draw from the facts alleged carries with it the admission upon the face of the complaint, that, under judicial proceedings for the enforcement of a mortgage lien older than, and having priority over, the Jackson mortgage, Beal had, in his lifetime, become the owner of the land included alike in both mortgages. This admission was obviously fatal to the appellant's demand of foreclosure, as against the widow and children of Beal.

As to whether the State may not yet be entitled to redeem the land from its sale on the Ribelin mortgage, is a question not now before us, and as to which nothing need be now decided.

The judgment is affirmed, at the costs of the relator of the appellant.